UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X

ANGELA CAPPELLETTI,

                        Plaintiff,

         -against-

SHARKNINJA OPERATING LLC,

                     Defendants.

---------------------------------------------------------------------X

**MEMORANDUM AND ORDER**

CV 23-2144 (GRB)

FILED
CLERK
5/12/2026 12:19 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**GARY R. BROWN, United States District Judge:**

> "[G]ravity does really exist."
>
>        -Sir Issac Newton, *Philosophiæ Naturalis Principia Mathematica* (1687)

Eons before Newton named the phenomenon, humans generally understood that an object in a container, unless secured, will fall toward the ground if that container is inverted.  Yet, here, defendant vehemently contests whether plaintiff's expert, a well-qualified mechanical engineer, should be permitted to testify to – essentially – that principle.  This is not because defendant contends that expert testimony is unnecessary – indeed, defendant has proffered an expert ready to testify to similar matters.  Rather, defendant contends that plaintiff's expert failed to employ appropriate techniques to reach the rather unremarkable conclusion that gravity still works.

Before the Court in this products liability action is defendant's motion to exclude expert testimony under *Daubert*, upon which it predicates a summary judgment motion.  Both are

1

highly aggressive motions, to which plaintiff's counsel has responded in kind.[1]  For the reasons that follow, those motions are denied.

**BACKGROUND**

Drawn from more than 1,000 pages of filings, the undisputed facts in this matter include the following:

Plaintiff acquired the unfortunately named "NINJA Professional Kitchen System," bearing model number BL 685, a kitchen appliance made by defendant.  For tactical reasons, plaintiff's counsel repeatedly refers to the device as a "blender," while defendant's counsel consistently uses the moniker "food processor."  In truth, the machine performs both well-known functions: the Ninja includes a base with a powerful motor, atop which the user can affix a blender pitcher or a food processor bowl.  Importantly for these purposes, in either functionality the device employs a sharp chopping blade assembly, which is not locked in place.  Hence, users are cautioned – both in the documentation and on warnings applied to the device – of the dangers posed by the loose blade when pouring out the contents, lest the intervention of gravity cause the chopping blade to fall from the receptacle, causing injury.

During her inaugural use of the device, after installing the chopping blade assembly, plaintiff, who was aware that the blades were sharp but unaware that they were loose, placed an onion and a half cabbage into the food processor bowl.  The machine did its thing.  Plaintiff then attempted to pour the contents into a skillet, removing the lid but failing to remove the chopping blade assembly, and used one hand to invert the vessel and the other to hold a spatula she intended to use to help the process along.  The blade slid out, seriously lacerating her finger.  She

---

[1] By way of example, plaintiff's counsel makes several waiver arguments that are so frivolous that they bear no discussion whatsoever.  *See* Docket Entry ("DE") 27 at 9; DE 30 at 10-11.

dropped the spatula. *See generally* DE 19.

Mingxi Zheng, plaintiff's expert, is indisputably a well-qualified engineer with extensive experience in mechanical engineering design and related matters. She reviewed several items generated in discovery, not including plaintiff's deposition. DE 19-2 at 5. In her examination of the device, she used the blender pitcher (rather than the food processor bowl) to determine that "the blade assembly is held only by gravity" and that "[i]f the product is inverted or tilted a little more than 90 degrees, the blade assembly will slide … out of the bowl." *Id.* at 7. She similarly tested a "KitchenAid 3.5 Cup Food Chopper" featuring a locking blade assembly which, perhaps unsurprisingly, does not slide out when pouring out the contents or tipping over the device. *Id.* at 7-8.

Based on this examination, she offers several opinions pertinent to this motion. First, Ms. Zheng opines that the design of the device – specifically, the absence of a blade locking mechanism – creates a risk that caused the injury in this case. DE 19-2 at 12. She further determined that the risk was "unnecessary" due to her comparison of the Ninja to the KitchenAid product. *Id.* Ms. Zheng opines, based on warnings provided with the Ninja as well as a recall of a similar product, that the loose blade hazard had "been identified and known to SharkNinja for an extended period of time prior to this incident." *Id.* Finally, Ms. Zheng takes issue with the type of risk assessment performed by defendant, claiming that their use of a Design Failure Modes and Effects Analysis ("DFMEA") as compared to a more general FMEA analysis, was insufficient. *Id.* at 10-12.

**DISCUSSION**

*Relevant Standards for Daubert Motion*

Federal Rule of Evidence 702 states that a witness, once qualified as an expert, may only

testify "if [1] the testimony is based upon sufficient facts or data; [2] the testimony is the product of reliable principles and methods; and [3] the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702. In *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579 (1993), the Supreme Court provided a list of factors trial judges should employ to evaluate the reliability of expert testimony, which the Second Circuit summarized as follows:

> Although Rule 702 sets forth specific criteria for the district court's consideration, the *Daubert* inquiry is fluid and will necessarily vary from case to case. The Supreme Court has identified a number of factors bearing on reliability that district courts may consider, such as (1) whether a theory or technique "can be (and has been) tested," *Daubert*, 509 U.S. at 593; (2) "whether the theory or technique has been subjected to peer review and publication," *id.*; (3) a technique's "known or potential rate of error," and "the existence and maintenance of standards controlling the technique's operation," *id.* at 594; and (4) whether a particular technique or theory has gained "general acceptance" in the relevant scientific community, *id*.
> ...
> These factors do not constitute, however, a "definitive checklist or test." *Daubert*, 509 U.S. at 593. Rather, "[t]he inquiry envisioned by Rule 702 is ... a flexible one," *id.* at 594, and "the gatekeeping inquiry must be tied to the facts of a particular case," *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) (internal quotation marks omitted).

*Amorgianos v. Nat'l R.R. Passenger Corp*., 303 F.3d 256, 266 (2d Cir. 2002) (cleaned up).

"In a products liability case, the touchstone of an expert's report should be a comparison of the utility and cost of the product's design and alternative designs." *Hilaire v. DeWalt Indus. Tool Co.*, 54 F. Supp. 3d 223, 244 (E.D.N.Y. 2014) (internal quotations omitted). "This comparison should usually be supported by testing of the alternative design." *Id.* However,

4

"such testing is not required ... if the expert can point to an existing design in the marketplace" that incorporates the expert's proposed alternative.  *Humphrey v. Diamant Boart, Inc.*, 556 F. Supp. 2d 167, 178 (E.D.N.Y. 2008); s*ee also Bah v. Nordson Corp.,* No. 00-CV-9060 (DAB), 2005 WL 1813023, at *8 (S.D.N.Y. Aug. 1, 2005) ("[T]he interlock switch and nozzle diffuser proffered by [the expert] do exist in the marketplace in products similar to the subject machine that he helped design, and thus testing is not needed to establish their feasibility.").

*Defective Design Opinion*

Defendant's initial attack on Ms. Zheng's opinion is as follows: she failed to read the deposition of plaintiff and therefore tested the blender pitcher, rather than the food processor bowl, by turning it over.[2]  These factors certainly represent less than ideal work, and one can only imagine the withering cross-examination and fiery closing that could follow.  Instead, though, counsel argues that she should not be permitted to offer her opinion on the loose blade design or on causation because her "entire theory rests on testing she performed on [] a completely different product."  DE 29-1 at 7.  The disingenuity of this argument centers on this: neither receptacle features a locking blade attachment, and therefore defendant cannot claim that had Zheng tested the food processor bowl, rather than the blender vessel, the blade attachment would have defied gravity and remained in the unit upon its inversion.  Indeed, the instructions warn of the dangers of the loose blade with either attachment.  And defendant further argues, extrapolating from those warnings, that Zheng's use of the phrase "normal pouring behavior" negates her opinion because a consumer who fully read the instructions would not pour from the bowl in this fashion.  *Id.* at 12-13.  If that argument held sway, then the existence of the warnings

---

[2] Counsel also argues that Zheng failed to simulate plaintiff's use (or attempted use) of a spatula, somehow contravening Zheng's opinion regarding safer alternative designs.  This seemingly tangential fact similarly might go to weight, but not admissibility.

5

would represent a complete legal defense, but under New York law, this is not the case. *McCarthy v. Olin Corp.*, 119 F.3d 148, 154-55 (2d Cir. 1997) (design defect and warning defect are "distinct claims"). And Zheng's failure to consider countervailing dangers in her assessment does not require exclusion.

This appears to be, as seems often to be the case, a situation in which the movant confuses a challenge to admissibility under *Daubert* with circumstances that go to the weight of the evidence. Indeed, as the Second Circuit explained in *Amorgianos:*

> "The judge should only exclude the evidence if the flaw is large enough that the expert lacks 'good grounds' for his or her conclusions." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3d Cir.1994); *see Daubert,* 509 U.S. at 590. This limitation on when evidence should be excluded accords with the liberal admissibility standards of the federal rules and recognizes that our adversary system provides the necessary tools for challenging reliable, albeit debatable, expert testimony. As the Supreme Court has explained, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert,* 509 U.S. at 596; *accord* Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 702.05[3] at 702–76.

*Amorgianos*, 303 F.3d at 267. Thus, Zheng may testify to her opinion that the loose blade design constituted a design defect. Relatedly, her opinion concerning the availability of alternative designs, given that she "can point to an existing design in the marketplace," is admissible. *Hilaire,* 54 F. Supp. 3d at 244. After being charged, the jurors will be more than capable of properly evaluating these opinions in connection with their deliberations.

*Proper Risk Assessment*

Whether Zheng may offer her opinions concerning the propriety of the risk assessment

6

performed cannot be determined on this record.  By way of example, if defendant intends to introduce its performance of an FMEA risk assessment, then plaintiff's expert could offer her opinions concerning the alleged inadequacies of such procedures and the manner in which a DFMEA assessment would have remedied any such problem.  In absence of such an offer, however, those opinions may not be admissible.  Thus, the motion is premature.[3]

*Summary Judgment Motion*

Disposing of defendant's motion to exclude nearly resolves its summary judgment motion.  One argument remains: that plaintiff's purported misuse of the product – to wit, attempting to pour the contents of the Ninja without first removing the blade – requires entry of summary judgment.  However, "[p]laintiff's mishandling of the product here, alone, is not enough to entitle defendants to summary judgment.  Summary judgment in a strict products liability case may be granted on the basis of the plaintiff's conduct when the plaintiff's actions constituted 'the sole proximate cause' of his or her injuries." *Yun Tung Chow v. Reckitt & Colman, Inc.*, 17 N.Y.3d 29, 34 (2011).  At trial, the evidence might establish that plaintiff's failure to properly heed the warnings provided was the sole proximate cause of her injury, or it may not.  But that is a question for another day.

**CONCLUSION**

Defendant's motions to exclude expert testimony and for summary judgment are DENIED.  The parties are directed to submit a proposed pretrial order, in accordance with the

---

[3] While not raised by the defendant, it appears that Zheng's opinion that the alleged hazard had "been identified and known to SharkNinja for an extended period of time prior to this incident," seems both outside of her expertise and a matter which the jury can easily evaluate without the assistance of expert testimony.  Therefore, the admissibility of *that* opinion seems highly dubious.

7

undersigned's individual rules, no later than June 15, 2026.  Trial will be scheduled shortly thereafter.


 Dated: Central Islip, New York
        May 12, 2026


                                        */s/ Gary R. Brown*
                                        GARY R. BROWN
                                        UNITED STATES DISTRICT JUDGE

8